# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COURTNEY LAINE BEEUNAS,<br><br>                          Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>                         Defendant. | Case No.: 3:17-cv-01521-JLS (RNB)<br><br>**ORDER (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND (2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF Nos. 20, 21) |

On July 26, 2017, Plaintiff Courtney Laine Beeunas filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying her applications for a period of disability and disability insurance benefits and for Supplemental Security Income ("SSI") (ECF No. 1 ("Compl.")). Both Parties filed Motions for Summary Judgment (ECF Nos. 20, 21). For the reasons set forth herein, Plaintiff's Motion for Summary Judgment is **GRANTED** and Defendant's Cross-Motion for Summary Judgment is **DENIED**. The case is **REMANDED** for further proceedings.

## PROCEDURAL BACKGROUND

On February 11, 2013, Plaintiff filed concurrent applications for disability insurance benefits and SSI under Titles II and XVI, respectively, of the Social Security Act. Certified

Administrative Record ("AR"), ECF No. 13, at 245–55. After her applications were denied initially and upon reconsideration, Plaintiff requested an administrative hearing before an administrative law judge ("ALJ"). AR 90–117, 120–47, 165–67. An administrative hearing was held on May 28, 2015, and a supplement hearing was held on October 6, 2015; Plaintiff was represented by counsel and testimony was taken from her and a vocational expert ("VE") at both hearings. AR 41–89.

As reflected in his December 9, 2015 decision, the ALJ found that Plaintiff had not been under a disability, as defined by the Social Security Act, from April 21, 2012, the alleged onset date. AR 21–35. The ALJ's decision became final on May 25, 2017, when the Appeals Council denied Plaintiff's request for review. AR 1–6. This timely civil action followed.

## SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 21, 2012. AR 26.

At step two, the ALJ found that Plaintiff had the following severe medically determinable impairments: ovarian cystic disease, migraine headaches, and fibromyalgia syndrome. *Id*. The ALJ further found that Plaintiff's medically determinable mental impairments of depression and anxiety did not cause more than minimal limitation in the ability to perform basic mental work activities and were therefore not severe. *Id.* at 27.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in the Commissioner's Listing of Impairments. *Id.* at 28.

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). AR 28. The ALJ also determined that "the [Plaintiff] can lift and carry 10 pounds, stand/walk for two hours in an eight-hour workday and sit for six hours in an eight-hour workday, with
///

postural limitations including rarely stooping, kneeling, crouching or crawling, or climbing stairs, i.e., 5% of the day or less." *Id.*

At step four, the ALJ determined that, based on her limitation to less than the full range of sedentary level work activity, Plaintiff was unable to perform any of her past relevant work as a chiropractor assistant, physical therapy assistant, sales clerk, or waitress. *Id.* at 33.

For purposes of his step five determination, the ALJ adduced and accepted the VE's testimony that a hypothetical person with Plaintiff's vocational profile could make a successful adjustment to other work that existed in significant numbers in the national economy. *Id.* at 33–34. Namely, Plaintiff would be able to perform the requirements of a telephone quotation clerk, addresser, or leaf tier. *Id.* at 34. Accordingly, the ALJ found that Plaintiff was not disabled. *Id.*

The sole issue in dispute in this case is whether, in determining Plaintiff's RFC, the ALJ properly discounted Plaintiff's pain and symptom testimony.

## LEGAL STANDARD

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575–76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529–30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

///

# ANALYSIS

## I. Motions for Summary Judgment

As noted above, the ALJ found that Plaintiff's migraine headaches and fibromyalgia syndrome qualified as severe impairments at step two of the Commissioner's sequential evaluation process. At the administrative hearing on May 28, 2015, Plaintiff testified that the main problems that kept her from being able to work were her headaches and constant pain. AR 75. According to Plaintiff, she had headaches almost every single day. *Id.* at 75–76. Plaintiff further testified that one of her physicians believed that her headaches were connected to her fibromyalgia, while another physician attributed the headaches to migraines. *Id.* at 76. Plaintiff had tried multiple different medications, but her physicians had been unable to manage her symptoms. *Id.* When the ALJ inquired whether Plaintiff's symptoms had improved with Imitrex, Plaintiff indicated that she had been improving but the Imitrex stopped working, so now she self-administered Imitrex injections and received infusions at the chemotherapy center every two weeks. *Id.* at 76–77. The infusions or cocktails included Phenergan, Toradol, and Benadryl, which usually put her to sleep for close to 36 hours to help break the cycle of the migraines. *Id.* at 77. She would usually get three days of relief after this before the migraines came back. *Id.* At the supplemental hearing on October 6, 2015, Plaintiff also testified to similar headache/migraine symptoms and effects. *Id.* at 47–48.

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1986). Under the "*Cotton* standard," however, where the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so. *See Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986); *see also Smolen v. Chater*, 80 F.3d 1273, 1281 (9th

Cir. 1996); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991). "General findings are insufficient; rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (internal quotation marks and citations omitted).

Here, the ALJ determined that "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms"; however, "[plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." AR 31. Although the ALJ did not separately enumerate his reasons for not crediting Plaintiff's pain and symptom testimony, the Court, like Defendant, gleans three reasons from the ALJ's decision. *See* ECF No. 21-1 ("Def.'s MSJ") at 8.

One of the ALJ's reasons was that "there is no indication in the evidence of record that [Plaintiff] is unable to attend to routine daily activities." AR 32. Specifically, the ALJ stated:

> The claimant's function report establishes that she remains independent in self-care, including dressing, showering, feeding and toileting. She reported that she continues to do laundry including washing, drying and folding, wash dishes[,] warm meals in the microwave, and on occasion, she cooks breakfast for her children. She reported that she cares for her children, supervising their showers and bedtime activities. She also indicated that she attends their sports activities including practice events and competitive sports games. She goes to physical therapy every week ([E]xhibit 7E). Moreover, the claimant's routine activities establish a level of functioning greater than that alleged. Dr. Nicholson, the psychiatric consultative examiner, opined that the claimant has no difficulty with dressing, bathing or maintaining personal hygiene without assistance. She can handle bills, handle case appropriately, and she is able to go out on her own (Exhibit 5F). Dr. Rodriguez opined that the claimant cooks, makes snacks, participates in household chores, dresses/bathes herself independently, uses rides from others, runs errands and goes to the unassisted. She can leave home alone,

> handle her own cash and pay her own bills. The claimant described a good relationship with family, relatives, friends, neighbors and others (Exhibit 2F). State Agency consultants determined that the medical evidence shows that although the claimant's condition results in some limitations, the claimant remains capable of performing full time work activity on a sustained basis.

*Id.*

The Ninth Circuit has noted that there are "two grounds for using daily activities to form the basis of an adverse credibility determination." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Evidence of the daily activities either (1) contradicts the claimant's other testimony, or (2) meets the threshold for transferable work skills. *Id.* Here, neither of these grounds applies. First, while the ALJ asserted that Plaintiff's allegations of disabling pain and limitation were inconsistent with the evidence of record, the ALJ failed to posit any specific testimony by Plaintiff that was contradicted by any of the specified daily activities. Moreover, in the Court's view, Plaintiff's testimony about her daily activities did not contradict her other testimony.

Second, evidence of Plaintiff's daily activities did not meet the threshold for transferable work skills. Evidence of a claimant's daily activities may be sufficient to discredit an allegation of disabling excess pain if the claimant "is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (emphasis omitted). Here, the same function report cited by the ALJ as evidence of Plaintiff's daily activities revealed that after Plaintiff did the few dishes the children used at breakfast and started the load of laundry the children brought down from upstairs, Plaintiff typically would lie down for an hour and usually end up sleeping for longer than that. *See* AR 293. Plaintiff also indicated in the function report that, while she tried to attend the children's sports practices, there were days when she was stuck in bed because of the pain. *Id.* She also indicated in the function report that she would only shower when
///

6

someone was nearby because she would get lightheaded and dizzy easily, and was afraid she was going to fall. *Id.*

Based on its own review of Plaintiff's function report, the Court finds that Plaintiff's testimony about her daily activities, which were sporadic and required rest, was not substantial evidence that Plaintiff spent a significant part of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting. *See, e.g.*, *Diedrich v. Berryhill*, 874 F.3d 634, 642–43 (9th Cir. 2017) (finding the claimant's ability to perform daily activities including personal hygiene, cooking, household chores, and shopping not a clear and convincing reason to find her less than fully credible); *Reddick*, 157 F.3d at 722 (holding the ALJ's finding that claimant's daily activities indicated an ability to work was unsupported by the record where claimant's daily activities were "sporadic and punctuated with rest"); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1996) ("The Social Security Act does not require claimants to be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication.") (internal citations omitted)).

The second reason cited by the ALJ is the absence of support from Plaintiff's treating sources. Specifically, the ALJ stated:

> [T]he evidence of record lacks detailed narrative reports from treating sources regarding the nature and severity of [plaintiff's] impairments. Additionally no treating source has provided any specific limitations secondary to the claimant's conditions that would preclude all work activity. Moreover, treatment records and progress notes fail to establish the level of severity alleged by [plaintiff].

AR 32–33.

The Court's own review of the record, however, reveals that none of Plaintiff's treating sources were ever asked to evaluate the nature and severity of Plaintiff's impairments, or provide an opinion regarding Plaintiff's work-related limitations due to her migraine and fibromyalgia impairments. Accordingly, the Court finds that the existing

record was not sufficiently developed for the ALJ to properly base his adverse credibility determination on Plaintiff's treatment records. *See Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered . . . when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."); *see also Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) (holding an ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered, even when the claimant is represented by counsel).

The third reason cited by the ALJ in support of his adverse credibility determination is the inconsistency between the physical examination findings and the opinion testimony of the consultative examiners and the State Agency physicians. AR 31–32. Specifically, the ALJ noted that "[p]hysical examinations of record . . . show that [plaintiff] continues to be able to walk and move in a satisfactory manner, with no significant muscle weakness or any indication of loss of control or muscle wasting in the arms and legs due to any nerve damage." *Id.* The ALJ also noted that an internal medicine consultative examiner opined that Plaintiff had the RFC to perform a reduced range of sedentary work activity, that the State Agency consultants opined that Plaintiff retained the capacity to perform sedentary work with no severe mental impairment, and that two psychiatric consultative examiners likewise opined that Plaintiff had only mild or slight limitations in all areas of mental functioning. *Id.*

The Court finds, however, that the opinions regarding the severity of Plaintiff's mental impairments are irrelevant to the issue of the credibility of her testimony regarding her pain and symptoms due to her migraines and fibromyalgia. Moreover, because the ALJ's other reasons were legally insufficient to support his adverse credibility determination, this remaining reason, *i.e.*, the lack of objective medical support, cannot be legally sufficient by itself. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006) (holding where ALJ's initial reason for adverse credibility determination was legally insufficient, his sole remaining reason premised on lack of medical support for claimant's testimony was legally insufficient); *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir.

1997) ("[A] finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain."); *cf. Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

In sum, after reviewing the administrative record and the arguments submitted by both Parties, the Court finds the ALJ's determination is not supported by substantial evidence.

## II. Remand vs. Reversal

The law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court. *See, e.g.*, *Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989); *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). Remand is warranted where additional administrative proceedings could remedy defects in the decision. *See, e.g.*, *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984); *Lewin*, 654 F.2d at 635. Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, *Kornock v. Harris*, 648 F.2d 525, 527 (9th Cir. 1980); where the record has been fully developed, *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits, *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985).

Where, as here, a claimant contends that she is entitled to an award of benefits because of an ALJ's failure to properly consider her subjective symptom testimony or the medical opinion evidence, the Court applies a three-step framework. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1099–1102 (9th Cir. 2014); *see also Burrell v. Colvin*, 775 F.3d 1133, 1141–42 (9th Cir. 2014); *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). First, the Court asks whether the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. Second, the Court determines whether the record has been fully developed, whether there are

outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful. Third, if the Court concludes that no outstanding issues remain and further proceedings would not be useful, the Court may find the relevant testimony credible as a matter of law and then determine whether the record, taken as a whole, leaves "not the slightest uncertainty as to the outcome of the proceeding." *Treichler*, 775 F.3d at 1100–01 (citations omitted). Only when all three elements are satisfied does a case raise the "rare circumstances" that allow the Court to exercise its discretion to remand for an award of benefits. *See id.*

But as the Ninth observed in *Dominguez v. Colvin*, 808 F.3d 403 (9th Cir. 2015) (internal citations and quotation marks omitted):

> A district court is generally not required to exercise such discretion. . . . District courts retain flexibility in determining the appropriate remedy, and a reviewing court is not required to credit a claimant's allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony. In particular, we may remand on an open record for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.

*Id.* at 407–08.

Here, while Defendant has made a lengthy argument that the proper remedy in the event of reversal would be a remand to the Commissioner for further administrative proceedings, *see* Def's MSJ at 20–23, Plaintiff has made only a cursory assertion that she is entitled to an award of benefits, *see* ECF No. 20-1, at 14. The Court deems Plaintiff's failure to adequately brief the issue of the appropriate remedy and failure to even reply to Defendant's contentions in this regard as a concession to Defendant's position that remand for an award of benefits is warranted here. *See Vasquez v. Astrue*, 572 F.3d 586, 597 (9th Cir. 2009) (declining to order an immediate payment of benefits where neither party presented any argument about the effect of the ALJ's errors, meaning that there were no facts presented that clearly indicated the proper outcome).

# CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is **GRANTED**, Defendant's cross-motion for summary judgment is **DENIED,** and it is hereby **ORDERED** that Judgment be entered **REVERSING** the decision of the Commissioner and **REMANDING** this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated: September 17, 2018

Hon. Janis L. Sammartino
United States District Judge